**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-001**

**Filing Date: November 8, 2011**

**Docket No. 29,609**

**BOBBY WINDHAM and**
**VICKIE K. WINDHAM,**

      **Plaintiffs,**

**v.**

**L.C.I.2, INC., a New Mexico**
**corporation,**

      **Defendant-Appellee,**

**and**

**NATIONWIDE MUTUAL**
**INSURANCE COMPANY,**

      **Intervenor-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Michael E. Vigil, District Judge**

Law Office of Paul S. Grand, P.A.
Paul S. Grand
Santa Fe, NM

for Appellee

Montgomery & Andrews, P.A.
Kevin M. Sexton
Shannon A. Parden
Albuquerque, NM

Beall & Beihler
Josh A. Harris
Albuquerque, NM

for Appellant

Will Ferguson & Associates
David M. Houliston
Albuquerque, NM

Sanders And Westbrook, PC
Maureen Sanders
Albuquerque, NM

for Plaintiffs

Calvert Menicucci, P.C.
Sean R. Calvert
Albuquerque, NM

for Amicus Curiae

**OPINION**

**VIGIL, Judge.**

**{1}** The memorandum opinion filed in this case on September 28, 2011, is hereby withdrawn, and this opinion is substituted in its place.

**{2}** The City of Taos hired L.C.I.2, Inc. (L.C.I.2), to construct a structure surrounding a pre-existing recreation area, which included a swimming pool, and L.C.I.2 in turn subcontracted with Plaintiff's employer, Newt & Butch's Sheet Metal, Inc. (Newt & Butch) to install the roof on the structure. Under the subcontract, Newt & Butch agreed to indemnify L.C.I.2 against and save it harmless from any and all claims, suits or liability for injuries to persons "on account of any act or omission of [Newt & Butch], or any of [its] officers, agents, employees or servants[.]" Pursuant to this provision in the subcontract, L.C.I.2 was named as an "additional insured" under a commercial general liability policy issued to Newt & Butch by Nationwide Mutual Insurance Company (Nationwide). In pertinent part, the policy provides that L.C.I.2 "is an additional insured only with respect to liability arising out of [Newt & Butch's] ongoing operations performed for [L.C.I.2]."

**{3}** While in the scope of his employment with Newt & Butch in installing the roof, Plaintiff, Bobby Windham, fell through the cutout for a skylight, and landed in the empty swimming pool. Plaintiff sued the general contractor, L.C.I.2, alleging that L.C.I.2 was negligent in failing to provide coverings of the cutouts for the skylights and in failing to implement, communicate, monitor, and enforce safety rules which would have prevented the accident. On the same basis, Plaintiff's wife sought damages for loss of consortium. L.C.I.2

2

denied liability, asserted that the work referred to in the complaint was being performed by the subcontractor, Newt & Butch, and that Plaintiff's injuries and damages were the result of Plaintiff's negligence, or the negligence of a third party, "thereby barring the relief requested or reducing it some percentage extent depending upon the degree of fault apportioned to Plaintiff or other third parties pursuant to the rules of pure comparative negligence adopted by the State of New Mexico."

{4} L.C.I.2 demanded a defense and indemnification from Nationwide as an additional insured under the policy. Nationwide accepted the defense under a reservation of rights. In pertinent part, Nationwide stated that under the policy, L.C.I.2 is an additional insured for damages arising out of Newt & Butch's ongoing operations performed for L.C.I.2. Accordingly, Nationwide said, it was reserving its rights, "because at this time, it is uncertain whether this incident arose out of [Plaintiff's] work for Newt & Butch's or whether [Plaintiff's] injuries arose out of L.C.I.2's individual negligence. Nationwide reserves its right to not defend or indemnify L.C.I.2 for any damages arising out of its individual negligence." Addressing Newt & Butch's contractual agreement to indemnify L.C.I.2, Nationwide reserved its rights "to not defend or indemnify L.C.I.2 for this matter in the event it is determined that [Plaintiff's] injuries arose out of the individual negligence of L.C.I.2." Nationwide then intervened in Plaintiffs' suit against L.C.I.2, and filed a complaint seeking a declaratory judgment that it had no duty to defend or indemnify L.C.I.2 from any claims asserted by Plaintiffs against L.C.I.2. Nationwide asserted that Plaintiffs made no claims against Newt & Butch; and under the express terms and conditions of the insurance policy and subcontract, it had no duty to defend or indemnify L.C.I.2. In addition, Nationwide asserted that pursuant to NMSA 1978, Section 56-7-1 (2003), any claim by L.C.I.2 for indemnity under the subcontract or insurance policy is void, unenforceable, and against public policy. L.C.I.2 denied that Nationwide was entitled to the declaratory judgment.

{5} Nationwide and L.C.I.2 filed motions for summary judgment in support of their respective positions. Nationwide argued that Plaintiffs only alleged that L.C.I.2 was negligent, and that an agreement by Newt & Butch in the subcontract or by its insurance to provide L.C.I.2 with a defense and indemnification for L.C.I.2's own negligence violates Section 56-7-1. L.C.I.2 argued that as an additional insured, it is entitled to a defense and indemnification under terms of the policy. Moreover, L.C.I.2 argued, Section 56-7-1 is not a bar because L.C.I.2 does not seek indemnification for its own negligence, but a defense to Plaintiffs' suit to the extent Plaintiffs' claim against L.C.I.2 "arises out of" Newt & Butch's acts or omissions. Following a hearing, the district court granted L.C.I.2's motion for summary judgment and denied Nationwide's motion for summary judgment. Nationwide appeals. We affirm.

**STANDARD OF REVIEW**

{6} The material facts are undisputed. Thus, our review of the order granting L.C.I.2 summary judgment is de novo. *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*,

3

2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146 ("[I]f no material issues of fact are in dispute and an appeal presents only a question of law, we apply de novo review and are not required to view the appeal in the light most favorable to the party opposing summary judgment.").

## DISCUSSION

### Preliminary Matters

{7}      Before addressing the merits, we note three preliminary matters.  First, in a separate order, the district court granted summary judgment to L.C.I.2 on Plaintiffs' claims of negligence against L.C.I.2.  In *Windham v. L.C.I.2, Inc.*, No. 29,212 (N.M. Ct. App. July 8, 2011), we filed a memorandum opinion reversing the summary judgment and remanded the case to the district court.  Thus, any arguments premised on that summary judgment are no longer viable.

{8}      Second, we note that Section 56-7-1 was amended in 2005.  2005 N.M. Laws, ch. 148, § 1.  However, the subcontract between L.C.I.2 and Newt & Butch was signed while the 2003 version of the statute was in effect.  Thus, the parties do not dispute, and we agree, that the 2003 version of Section 56-7-1 applies, and all references herein are to the 2003 version of the statute.

{9}      Finally, Nationwide clarified in oral argument that while it acknowledges a duty to provide L.C.I.2 a defense as an "additional insured" under the commercial liability policy issued to Newt & Butch, its contention on appeal is that providing a defense in this case violates Section 56-7-1; and the duty is void.  Thus, there is no issue before us concerning coverage of a duty to defend.  We also observe that we are not presented with any question concerning a duty to indemnify in the present posture of the case.

### Analysis

{10}    We begin our analysis with the statute.  Section 56-7-1 in pertinent part states:

>      A.      A provision in a construction contract that requires one party to the contract to indemnify, hold harmless, insure or defend the other party to the contract, including the other party's employees or agents, against liability, claims, damages, losses or expenses, including attorney fees, arising out of bodily injury to persons or damage to property caused by or resulting from, in whole or in part, the negligence, act or omission of the indemnitee, its officers, employees or agents, is void, unenforceable and against the public policy of the state.

4

B.     A construction contract may contain a provision that, or shall be enforced only to the extent that, it:

(1)     requires one party to the contract to indemnify, hold harmless or insure the other party to the contract, including its officers, employees or agents, against liability, claims, damages, losses or expenses, including attorney fees, only to the extent that the liability, damages, losses or costs are caused by, or arise out of, the acts or omissions of the indemnitor or its officers, employees or agents; or

(2)     requires a party to the contract to purchase a project-specific insurance policy, including an owner's or contractor's protective insurance, project management protective liability insurance or builder's risk insurance.

. . . .

E.     As used in this section, "indemnify" or "hold harmless" includes any requirement to name the indemnified party as an additional insured in the indemnitor's insurance coverage for the purpose of providing indemnification for any liability not otherwise allowed in this section.

**{11}** Nationwide argues: (1) Section 56-7-1 voids any duty to provide L.C.I.2 a defense because the complaint only alleges that L.C.I.2's acts or omissions caused Plaintiffs' injuries, Newt & Butch is not a party to the suit, the complaint makes no allegation of negligence against Newt & Butch, and there has been no finding that Newt & Butch was negligent; and (2) Section 56-7-1(B) and (E) only allow for a recovery of attorney fees *after* a determination that any losses of L.C.I.2 were caused by Newt & Butch, and only to the extent that such losses were caused by Newt & Butch.

**{12}** Nationwide's first argument is premised on its assertion that Section 56-7-1 on its face voids a provision in a construction contract which requires an indemnitor (Newt & Butch) to provide a defense to an indemnitee (L.C.I.2) for injuries caused by, or resulting from, in whole or in part, the negligence, act, or omission of the indemnitee (L.C.I.2).

**{13}** Our decision in *City of Albuquerque* is dispositive of Nationwide's arguments. In *City of Albuquerque*, BPLW designed and oversaw the construction of a rental car facility at the airport pursuant to a contract with the City. 2009-NMCA-081, ¶ 2. In pertinent part, the contract provided that BPLW agreed to defend the City for all suits brought against the City because of injury received or sustained by any person "arising out of or resulting from any negligent act, error, or omission of [BPLW] . . . arising out of the performance" of the contract. *Id.* ¶ 14 (alterations in original) (internal quotation marks and citation omitted). After the facility opened, a customer fell off a curb while exiting one of the buildings at the facility, filed suit against the City, and subsequently amended the complaint to add BPLW

5

as a defendant. *Id.* ¶ 2. When it received the complaint, the City requested BPLW to honor its contractual obligation to defend the City, and BPLW refused. *Id.* ¶ 4. Accordingly, the City filed a cross-claim against BPLW, alleging that BPLW had a contractual duty to defend the City for any cause of action arising out of BPLW's performance of the contract. *Id.* The City filed a motion for partial summary judgment asserting that BPLW had a legal duty to defend the City, and the district court granted the City's motion. *Id.* ¶ 5. On appeal, we affirmed the district court. *Id.* ¶ 32.

{14} Since neither party disputed that the allegations against the City were that the City itself was negligent, the initial question posed was whether the contract required BPLW to provide the City with a defense. *Id.* ¶ 13. Aside from very specific and limited exceptions that are not applicable here, we held that the plain language of the contract required BPLW to defend *all* suits brought against the City arising out of a negligent act, error, or omission of BPLW in performing the contract. *Id.* ¶¶ 15-16. This specifically included causes of action alleging that the City itself was negligent, as long as the cause of action arose from BPLW's performance of the agreement. *Id.* BPLW argued, as Nationwide does here, that enforcing the contractual obligation would violate Section 56-7-1. *Id.* ¶ 19. We disagreed and said:

> Here, requiring BPLW to fulfill its contractual obligation to defend the City against any suit against the City arising out of BPLW's alleged negligence in the performance of the contract does not violate Section 56-7-1 or the policy behind it. Instead, this interpretation of the contract is fully consistent with the requirements of the statute. It promotes safety in the construction project because it ensures that BPLW will be accountable for any harm caused by its performance of the agreement.

*Id.* ¶ 20. We recently reiterated our conclusion in *City of Albuquerque* that "requiring the contractor to indemnify and defend the City for the contractor's alleged negligence does not violate the construction anti-indemnity statute [Section 56-7-1] or the policy behind it." *Holguin v. Fulco Oil Servs. L.L.C.*, 2010-NMCA-091, ¶ 43, 149 N.M. 98, 245 P.3d 42, *cert. granted*, 2010-NMCERT-010, 149 N.M. 65, 243 P.3d 1147. We therefore conclude that Section 56-7-1 does not void Nationwide's obligation to provide L.C.I.2 a defense.

{15} Nationwide's second argument is premised on its attempt to distinguish *City of Albuquerque*. Nationwide argues that *City of Albuquerque* is distinguishable because it relied on exclusionary language that was eliminated in the 2003 amendment and because the new exclusionary language that was added does not refer to a duty to defend. Specifically, Nationwide argues, Section 56-7-1(A) is a general prohibition against agreements that allow an indemnitor (Newt & Butch) to indemnify an indemnitee (L.C.1.2) for the indemnitee's own negligence, and this general prohibition specifically refers to agreements to defend. Nationwide asserts that Section 56-7-1(B), which establishes when agreements generally prohibited by Section 56-7-1(A) will be permitted, specifically refers to many of the types of agreements listed in Section 56-7-1(A), but does not specifically refer to a duty to defend.

In line with this reasoning, Nationwide asserts that even if Section 56-7-1(A) does not void the agreement, Section 56-7-1(B) and (E) only allow for a recovery of attorney fees *after* a determination that any losses of L.C.I.2 were caused by Newt & Butch, and only to the extent that such losses were caused by Newt & Butch. We disagree for two reasons.

**{16}**     First, we specifically noted the 2003 amendments to Section 56-7-1 in *City of Albuquerque*, and we concluded that the amendments did not void the contractual duty to defend in that case. 2009-NMCA-081, ¶¶ 19-20. We fail to see any material difference in the duty to defend in *City of Albuquerque* and the case before us now.

**{17}**     Secondly, Nationwide in effect asks us to treat its duty to defend as a claim for indemnification. However, as we stated in *City of Albuquerque*, the duty to indemnify is distinct from the duty to defend, and resolution of whether there is a duty to defend does not necessarily depend on there being a duty to indemnify. *Id.* ¶ 31. The general rule giving rise to the duty to defend is well settled:

> If the allegations of the injured third party's complaint show that an accident or occurrence comes within the coverage of the policy, the insurer is obligated to defend, regardless of the ultimate liability of the insured. The question presented to the insurer in each case is whether the injured party's complaint states facts which bring the case within the coverage of the policy, not whether he can prove an action against the insured for damages. The insurer must also fulfill its promise to defend even though the complaint fails to state facts with sufficient clarity so that it may be determined from its face whether or not the action is within the coverage of the policy, provided the alleged facts tend to show an occurrence within the coverage.

*Am. Emp'rs Ins. Co. v. Cont'l Cas. Co.*, 85 N.M. 346, 348, 512 P.2d 674, 676 (1973) (quoting 1 Long, The Law of Liability Insurance § 5.02 (1973)).

**{18}**     In the case before us, L.C.I.2 is an "additional insured" under the policy issued to Newt & Butch by Nationwide "with respect to liability *arising out of* [Newt & Butch's] ongoing operations performed for [L.C.I.2]." (Emphasis added.). *City of Albuquerque* addressed how the phrase "arising out of" is to be construed: "The phrase 'arising out of' is given a broad interpretation by our courts and is generally understood to mean originating from, having its origin in, growing out of, or flowing from." 2009-NMCA-081, ¶ 22 (alteration omitted) (internal quotation marks and citation omitted). Applying *City of Albuquerque*, Plaintiffs' allegations against L.C.I.2 "arise out of" Newt & Butch's installation of the roof on the structure. Therefore, under our settled precedent, Nationwide has a duty to defend L.C.I.2 regardless of L.C.I.2's ultimate liability to Plaintiffs.

**CONCLUSION**

**{19}**     The order of the district court is affirmed.

{20}   IT IS SO ORDERED.

_____
                            **MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**CYNTHIA A. FRY, Judge**

**Topic Index for _Windham v. LCI2_, Inc., No. 29,609**

| **AE** | **APPEAL AND ERROR** |
|--------|----------------------|
| AE-SR  | Standard of Review   |

| **CM** | **COMMERCIAL LAW** |
|--------|--------------------|
| CM-CT  | Contractors and Subcontractors |

| **CN** | **CONTRACTS** |
|--------|---------------|
| CN-DD  | Duty to Defend |
| CN-ID  | Indemnification Agreement |

| **CP** | **CIVIL PROCEDURE** |
|--------|---------------------|
| CP-SJ  | Summary Judgment |

| **JM** | **JUDGMENT** |
|--------|--------------|
| JM-DJ  | Declaratory Judgment |