Certiorari Granted, January 28, 2013, No. 33,969

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMCA-021

Filing Date: October 19, 2012

Docket No. 30,196

SAFEWAY, INC.,

Defendant/Cross-Claimant-Appellant,

v.

ROOTER 2000 PLUMBING AND DRAIN SSS,

Defendant/Cross-Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF McKINLEY COUNTY
Louis E. DePauli, Jr., District Judge

Madison, Harbour & Mroz, P.A.
Gregory D. Steinman
Robert J. Sanchez
Albuquerque, NM

for Appellant

Butt, Thornton & Baehr, P.C.
Emily A. Franke
Jane A. Laflin
Albuquerque, NM

for Appellee

OPINION

VIGIL, Judge.

{1}     This case requires us to examine which version of New Mexico's anti-indemnity statute applies to an agreement between a contractor and a landowner: the version of the statute that was in force when the parties signed the agreement, or the amended version that

1

was in force when the contractor performed the work and the accident occurred. We conclude that the version of the statute that was in effect when the contract was signed applies and that the statute voided the contractor's agreement to indemnify but not its agreement to defend and insure. We also conclude that notwithstanding the unenforceability of the parties' indemnification agreement, material issues of fact precluded entry of summary judgment on the landowner's claim of common law indemnification. Accordingly, we reverse in part and affirm in part.

## I.  BACKGROUND

{2}  Safeway, Inc. (Safeway) owns a grocery store in Gallup, New Mexico. On March 10, 2005, Rooter 2000 Plumbing and Drain SSS (Rooter) installed a diaper changing table in the Safeway store. On April 8, 2006, Brianna DeWeese and her child (Plaintiffs) were injured when the baby changing table became dislodged and fell from the wall. In an amended complaint, Plaintiffs sued Safeway and Rooter alleging general negligence, negligence per se, breach of implied warranty, strict liability, and a claim under the doctrine of respondeat superior against Safeway. Safeway demanded a defense from Rooter's insurance company, but Safeway was not named by Rooter as an additional insured on its policy, and the insurance company denied Safeway's request. Rooter also declined to otherwise provide Safeway a defense.

{3}  Safeway then filed a cross-claim against Rooter, alleging that Rooter was in breach of the Standard Service Provider Terms and Conditions Agreement (Agreement) between them that was in effect when Rooter installed the diaper changing table. Safeway sought indemnification and damages pursuant to the contract, common law indemnification, and contribution from Rooter. The relevant provision of the Agreement states:

> [Rooter] shall indemnify, defend and hold [Safeway] harmless from and against: any and all claims, losses, damages, liabilities, and expenses (including the costs of investigation and attorney's fees) in connection with any claim or cause of action arising from any act or omission of [Rooter,] its employees, agents, and representatives, in the performance of its obligations under this Agreement, except where the claim, loss or damage is caused by the sole negligence of [Safeway].

The Agreement also requires Rooter to maintain liability insurance and to name Safeway as an additional insured on that policy.

{4}  Rooter and Plaintiffs settled before trial. Rooter filed a motion for summary judgment in the district court requesting that summary judgment be granted on all of Safeway's cross-claims, asserting that the agreement was void under NMSA 1978, Section 56-7-1 (1971, as amended through 2005). At the hearing on Rooter's motion for summary judgment, Plaintiffs abandoned their strict and vicarious liability claims against Safeway but retained their claim that Safeway had a non-delegable duty to maintain safe premises.

2

Plaintiffs also represented that they would be willing to include other Defendants on the special verdict form for comparative fault purposes and would not require Safeway to pay any percentage of fault assigned by the jury to Rooter at trial. The district court granted Rooter's motion and dismissed all of Safeway's cross-claims. Safeway's claim for common law indemnification was dismissed because "[t]he Plaintiff is not seeking liability or damages from Safeway for Rooter's acts or omissions." The court orally ruled in the hearing that the agreement to indemnify, defend, and insure was void as against public policy under Section 56-7-1. The district court did not address which version of the statute it was applying, nor did it include this in the written order.

{5}     Safeway and Plaintiffs proceeded to trial on the remaining claims. The jury found that Safeway was negligent, awarded damages, and apportioned fault on a special verdict form assigning forty percent fault to Safeway and sixty percent fault to Rooter. Safeway appeals from the district court order granting summary judgment to Rooter on Safeway's cross-claims for indemnification and its defense costs.

II.     ANALYSIS

{6}     Safeway asserts that summary judgment was improper for four reasons: (A) the 2003 amended version of Section 56-7-1 applies to the Agreement because the events invoking the provisions of the Agreement occurred after 2003; (B) Rooter's agreement to indemnify is not barred by Section 56-7-1; (C) the doctrine of common law indemnification requires Rooter to indemnify Safeway independent of any effect of Section 56-7-1; and (D) the defense and insurance provisions in the Agreement are not barred by Section 56-7-1. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. All issues raised in this appeal are legal issues, which we review de novo. *Id.*

A.     **Application of Amended Version of Section 56-7-1**

{7}     In 2003, between the signing of the agreement between Rooter and Safeway and the relevant events giving rise to Plaintiffs' lawsuit, Section 56-7-1 was amended. 2003 N.M. Laws, ch. 309, § 1. Section 56-7-1 had not been amended since its enactment in 1971. The original version stated in pertinent part:

> Any provision, contained in any agreement relating to the construction, installation, alteration, modification, repair, maintenance, servicing, demolition . . . of any real property, or any improvement of any kind . . . by which any party to the agreement *agrees to indemnify* the indemnitee, or the agents and employees of the indemnitee, against liability, claims, damages, losses or expenses, including attorney fees, arising out of bodily injury to persons or damage to property caused by, or resulting from, in whole or in part, the negligence, act or omission of the indemnitee, or the

3

agents or employees of the indemnitee, or any legal entity for whose negligence, acts or omissions any of them may be liable, is against public policy and is void and unenforceable[.]

Section 56-7-1 (1971) (emphasis added).  The statute defined "indemnify" as:

without limitation, an agreement to remedy damage or loss caused in whole or in part by the negligence, act or omission of the indemnitee, the agents or employees of the indemnitee, or any legal entity for whose negligence, acts or omissions any of the foregoing may be liable.

*Id.*

**{8}**     The 2003 version of the statute was amended to state in pertinent part:

A.     A provision in a construction contract that requires one party to the contract *to indemnify, hold harmless, insure or defend* the other party to the contract, including the other party's employees or agents, against liability, claims, damages, losses or expenses, including attorney fees, arising out of bodily injury to persons or damage to property caused by or resulting from, in whole or in part, the negligence, act or omission of the indemnitee, its officers, employees or agents, is void, unenforceable and against the public policy of the state.

B.     A construction contract may contain a provision that, or shall be enforced only to the extent that, it:

(1)     requires one party to the contract to indemnify, hold harmless or insure the other party to the contract, including its officers, employees or agents, against liability, claims, damages, losses or expenses, including attorney fees, only to the extent that the liability, damages, losses or costs are caused by, or arise out of, the acts or omissions of the indemnitor or its officers, employees or agents; or

(2)     requires a party to the contract to purchase a project-specific insurance policy, including an owner's or contractor's protective insurance, project management protective liability insurance or builder's risk insurance.

Section 56-7-1(A), (B) (2003) (emphasis added).

**{9}**     The 2003 amendment also added that to "indemnify or hold harmless" included "any requirement to name the indemnified party as an additional insured in the indemnitor's insurance coverage for the purpose of providing indemnification for any liability not

4

otherwise allowed in this section." Section 56-7-1(E) (2003). The statute was again amended in 2005 by adding a new subsection dealing with state contracts, but not changing any other provision. Safeway asserts, and we agree, that those amendments do not affect the disposition of this case.

**{10}** In *Windham v. L.C.I.2, Inc.*, 2012-NMCA-001, ¶ 8, 268 P.3d 528, we applied the version of Section 56-7-1 that was in effect when the parties signed the contract, although the statute had been subsequently amended because the parties did not dispute that the version of the statute that was in effect at the time of the formation of the contract controlled. Here, however, Safeway argues that although the original version of Section 56-7-1 was in effect at the time the parties signed the contract, the version as amended in 2003 applies because that was the version which was in effect at the time Rooter performed its work and the accident occurred. We disagree. Rather, we conclude that the version of the statute in effect at the time the contract is signed governs and explain in greater detail our reasons.

**{11}** Provided that a contract is enforceable, we generally construe it in light of the law that was in existence at the time the contract was signed, in line with our policy of enforcing the parties' intent and justified expectations at the time they made their agreement. *See State Farm Mut. Auto Ins. Co. v. Valencia*, 120 N.M. 662, 663-64, 905 P.2d 202, 203-04 (Ct. App. 1995) (stating that contracts incorporate the relevant law in force at the time of their creation); *see also Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 11, 129 N.M. 698, 12 P.3d 960 (stating that contract interpretation has the goal of "ascertaining the intentions of the contracting parties with respect to the challenged terms at the time they executed the contract" (alteration, internal quotation marks, and citation omitted).

**{12}** Furthermore, generally statutes are to be applied prospectively, absent a clear legislative intent to the contrary. *See Quintana v. Los Alamos Med. Ctr.*, 119 N.M. 312, 314, 889 P.2d 1234, 1236 (Ct. App. 1994); *see also Wegner v. Hair Prods. of Tex.*, 2005-NMCA-043, ¶ 14, 137 N.M. 328, 110 P.3d 544 ("If retroactive application of a newly enacted law attaches new legal consequences to events completed before its enactment, substantial rights are affected, and prospective application is generally required."). We acknowledge Safeway's assertion that an exception to the prospective application of statutes exists where the statute deals with a "remedial procedure," but Safeway makes no argument and cites no authority connecting Section 56-7-1 to a remedial procedure. We therefore decline to entertain its undeveloped argument for retroactive application of the statute. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (stating that we will not review unclear arguments or guess at what the arguments might be). Rather, we conclude that it is most appropriate under these circumstances to apply the version of the statute in effect at the time the parties formed the Agreement.

**{13}** The original version of Section 56-7-1 contained a wholesale prohibition against indemnity agreements, while the amended version allows parties to contract for indemnification to compensate an indemnitee for the negligence of the indemnitor. *See Holguin v. Fulco Oil Servs. L.L.C.*, 2010-NMCA-091, ¶¶ 37-44, 149 N.M. 98, 245 P.3d 42

5

(concluding that the amended version of Section 56-7-1 allows enforcement to the extent that the agreement allows indemnification to an indemnitee for an indemnitor's negligence, reflecting a change in the law from the prior version of the statute), *cert. granted*, 2010-NMCERT-010, 149 N.M. 65, 243 P.3d 1147; *see also Sierra v. Garcia*, 106 N.M. 573, 575-76, 746 P.2d 1105, 1107-08 (1987) (applying the prior version of the statute and refusing to reform an agreement to be enforced only to the extent of allowing indemnification for the indemnitor's negligence). Further, while the original version of Section 56-7-1 was silent as to agreements requiring one party to defend or insure another against claims from a third party, the 2003 amendments provide that agreements to defend and insure for the acts of the indemnitee are void and unenforceable in the same manner as agreements to indemnify for the same acts. Section 56-7-1(A) (2003).

**{14}** Because the statute added that agreements to insure and defend are unenforceable to the same extent as agreements to indemnify at least to the extent the agreement purports to indemnify for the acts of the indemnitee, it would undermine the parties' justified expectations at the time of the signing of the contract to apply the amended version of the statute to this case. Thus, we conclude that the statute in effect at the time of the signing of the contract controls, irrespective of the statute's subsequent amendment. *See*, *e.g.*, *Windham*, 2012-NMCA-001, ¶ 8 (agreeing with the parties' stipulation, without deciding, that the version of the anti-indemnification statute that was in effect at the time of the signing of the contract controlled); *Holguin*, 2010-NMCA-091, ¶ 40 (applying the version of anti-indemnification statute that was in effect at the time the contract was signed); *K.R. Swerdfeger Constr., Inc. v. Bd. of Regents, Univ. of N.M.*, 2006-NMCA-117, ¶ 9, 140 N.M. 374, 142 P.3d 962 (concluding that the version of the Uniform Arbitration Act that was in effect at the time the contract was signed governed, although the Act had been subsequently amended); *Bogle Farms, Inc. v. Baca*, 1996-NMSC-051, ¶¶ 33-36, 122 N.M. 422, 925 P.2d 1184 (discussing the parties' reliance on precedent in effect at the time the contract was signed). We therefore proceed in applying the 1971 version of Section 56-7-1 to the terms of the Agreement between Safeway and Rooter.

### B.    Contractual Indemnification

**{15}** The 1971 version of Section 56-7-1 invalidates all indemnity agreements relating to construction contracts, whether they indemnify against the indemnitee's or the indemnitor's negligence. *See Sierra*, 106 N.M. at 575-76, 746 P.2d at 1107-08 (concluding that the original version of Section 56-7-1 applied to render agreements unenforceable whether they were for indemnity for the indemnitee's or the indemnitor's negligence). Safeway acknowledges that if the original version of the statute applies, the indemnification provision in the Agreement is unenforceable. We agree. We therefore conclude that Rooter had no contractual duty to indemnify under the Agreement.

### C.    Common Law Indemnification

**{16}** Safeway next argues that even if the agreement to indemnify is unenforceable under

6

Section 56-7-1, a common law right to "traditional indemnification" exists and entitles Safeway to indemnification from Rooter. Although the cases refer to the common law right as "traditional indemnification," we refer to the right as "common law indemnification" for clarity. *See Otero v. Jordan Rest. Enters.*, 1996-NMSC-047, ¶ 12, 122 N.M. 187, 922 P.2d 569; *In re Consol. Vista Hills Retaining Wall Litig.*, 119 N.M. 542, 545, 893 P.2d 438, 441 (1995). "[Common law] indemnification grants the person who has been held liable for another's wrongdoing an all-or-nothing right of recovery from a third party, such as the primary wrongdoer." *Christus St. Vincent Reg'l Med. Ctr. v. Duarte-Afara*, 2011-NMCA-112, ¶ 14, 267 P.3d 70 (internal quotation marks and citation omitted). "The purpose of [common law] indemnification is to allow a party who has been held liable without active fault to seek recovery from one who was actively at fault." *In re Vista Hills Retaining Wall Litig.*, 119 N.M. at 546, 893 P.2d at 442. "Thus the right to indemnification involves whether the conduct of the party seeking indemnification was passive and not active or in pari delicto with the indemnitor." *Id.* Acting in pari delicto refers to the parties being "negligent in an equal degree." *Trujillo v. Berry*, 106 N.M. 86, 87, 738 P.2d 1331, 1333 (Ct. App. 1987) (internal quotation marks and citation omitted). We have defined active and passive conduct as follows:

> Active conduct occurs when the indemnitee personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty, which the indemnitee had agreed to perform. Passive conduct occurs when the party seeking indemnification fails to discover and remedy a dangerous situation created by the negligence or wrongdoing of another.

*Budget Rent-A-Car Sys., Inc. v. Bridgestone*, 2009-NMCA-013, ¶ 12, 145 N.M. 623, 203 P.3d 154 (internal quotation marks and citation omitted).

**{17}** Our Supreme Court discussed the passive/active distinction in a different, but analogous, circumstance in *Otero*. In *Otero*, a restaurant owner had been sued by a patron who was injured when bleachers in its restaurant collapsed. *See* 1996-NMSC-047, ¶¶ 1, 4. The bleachers had been negligently installed by a contractor who was granted a commercial construction permit by the city, although the contractor was only licensed for residential construction. *See id.* ¶ 5. The restaurant owner requested an instruction allowing the jury to consider the comparative fault both of an architect, who failed to provide specifications for the bleachers, and of the city, which had issued the permit to the contractor. *See id.* The district court denied the instruction. *See id.* The Supreme Court first held that the restaurant owner stood in the shoes of the contractor under the non-delegable duty doctrine. *See id.* ¶¶ 2, 14. For support, the Supreme Court cited Restatement (Second) of Torts § 422(b) (1965), which states:

> A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the

7

work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure . . . [if he has possession of the land while the work is being completed, or] after he has resumed possession of the land upon its completion.

Nevertheless, the Supreme Court concluded that the negligent contractor had no right to assign fault to the city because it had misrepresented its licensing qualification to the city in the permitting process and, therefore, the restaurant owner likewise had no right to apportion fault to the city because it stood in the shoes of the contractor. *Otero*, 1996-NMSC-047, ¶ 18.

**{18}** The Supreme Court also concluded that the restaurant owner was not liable to indemnify concurrent tortfeasors for any damages assessed against it because the restaurant owner was not an active tortfeasor. *See id.* ¶ 14. The Supreme Court cited to the Restatement to support its reasoning, which states: "'Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land[,] . . . which was created by the misconduct of the other[,] . . . he is entitled to restitution from the other . . . unless after discovery of the danger, he acquiesced in the continuation of the condition.'" *Id.* ¶ 13 (quoting Restatement (First) of Restitution § 95 (1937)). The Court concluded that the restaurant owner was not an active tortfeasor based upon the undisputed evidence that the bleachers were negligently installed by the contractor and that the restaurant owner did not discover the unsafe condition. *Otero*, 1996-NMSC-047, ¶ 14.

**{19}** The Supreme Court thus affirmed the district court's finding that the restaurant owner was entitled to indemnification from both the contractor and architect for whose negligence it was held liable under the non-delegable duty doctrine. *See id.* ¶ 3 n.2. Other New Mexico cases have also stated that the determination of the circumstances under which such indemnification is warranted lies in the distinction "between one who was negligent '. . . in failing to discover and remedy a dangerous condition . . .' and one who 'created' the dangerous condition." *Harmon v. Farmer's Mkt. Food Store*, 84 N.M. 80, 82, 499 P.2d 1002, 1004 (Ct. App. 1972) (quoting *Rio Grande Gas Co. v. Stahmann Farms, Inc.*, 80 N.M. 432, 436, 457 P.2d 364, 368 (1969)).

**{20}** We therefore conclude that a common law right to indemnification exists in circumstances in which a landowner is held liable for damages as a passive tortfeasor for failing to discover a dangerous condition on its land created by another tortfeasor. *See In re Vista Hills Retaining Wall Litig.*, 119 N.M. at 547, 893 P.2d at 443 (stating that where a party fails to discover and remedy a dangerous situation created by another, "the conduct of the party not discovering the dangerous condition is passive"); *Spectron Dev. Lab. v. Am. Hollow Boring Co.*, 1997-NMCA-025, ¶ 19, 123 N.M. 170, 936 P.2d 852 (stating that irrespective of a non-delegable duty to an injured third party, an employer can generally recover indemnification from a contractor and that the non-delegable duty is to prevent an employer from escaping liability by hiring an independent contractor, and stating "[t]hat

8

rationale, however, hardly justifies permitting the actual tortfeasor—the contractor—to escape responsibility by denying the employer the right to indemnification from the contractor").

**{21}** Here, Plaintiffs represented to the district court that they were seeking damages under the non-delegable duty doctrine, based on Safeway's alleged failure to maintain safe premises. Rooter does not dispute that the theory presented to the jury for Safeway's negligence was based on the non-delegable duty doctrine, and states that "[t]he claim against Safeway arose out of Safeway's duty to keep the premises safe." Thus, the parties agree that the jury was presented with a theory against Safeway under the non-delegable duty doctrine, under which our case law allows for common law indemnification to passive tortfeasors.

**{22}** Rooter argues that because the jury apportioned fault between Safeway and Rooter no common law right to indemnification can remain for Safeway to invoke because it was held liable only for its own negligence. We disagree. The non-delegable duty doctrine, like vicarious liability and strict liability, allows the *plaintiff* to recover from a party who was not actively at fault. *See Otero v. Jordon Rest. Enters.*, 119 N.M. 721, 723-24, 895 P.2d 243, 245-46 (Ct. App. 1995) (stating that a landowner has a non-delegable duty irrespective of whether the landowner is at fault), *aff'd by* 1996-NMSC-047; *Broome v. Byrd*, 113 N.M. 38, 40-41, 822 P.2d 677, 679-80 (Ct. App. 1991) (same); Restatement (Second) of Torts § 422. However, under Section 95 of the Restatement (First) of Restitution, the passive tortfeasor retains a right of recovery from the active tortfeasor for the damages assessed against it, regardless of his failure to discover the condition. *See* Restatement (First) of Restitution § 95 cmt. a ("[T]he [indemnitee] is not barred by the fact that he was negligent in failing to discover or to remedy the defect as a result of which the harm was occasioned; in most of the cases it is because of this failure that he is liable."). Our Supreme Court has explicitly reserved the right of common law indemnification in spite of rights of "proportional indemnification" and contribution that divide the fault between co-defendants, because common law indemnification allows a passive wrongdoer who is not at fault to recover in full from an active tortfeasor who is at fault. See *In re Vista Hills Retaining Wall Litig.*, 119 N.M. at 545, 553, 893 P.2d at 441, 449 (stating that the doctrine of common law indemnification allows the passive tortfeasor an "all-or-nothing" right of recovery from the party actively at fault).

**{23}** The fact that the jury apportioned fault between the parties at trial does not strip away Safeway's common law right of indemnification to obtain full recovery for damages assessed against it from Rooter, assuming that Safeway is found by the jury to be a passive tortfeasor. *See* NMSA 1978, § 41-3A-1(F) (1987) (stating in statute abolishing joint and several liability and adopting comparative fault that "[n]othing in this section shall be construed to affect or impair any right of indemnity or contribution arising out of any contract of agreement or any right of indemnity otherwise provided by law"); *Trujillo*, 106 N.M. at 87, 738 P.2d at 1332 (stating that notwithstanding New Mexico's adoption of comparative fault, traditional indemnification is still available in cases involving vicarious liability or strict liability, where the liability of the indemnitee arises not from its own fault, but from its relationship with the

9

party at fault). Contrary to Rooter's argument, the fact that the jury apportioned fault to Safeway at trial did not establish whether Safeway was a passive tortfeasor and entitled to indemnification, because summary judgment was granted before trial and the jury was not instructed on those theories.

**{24}** We conclude that the question of whether Safeway was an active or passive tortfeasor should have been presented to the jury. *See generally Dessauer v. Mem'l Gen. Hosp.*, 96 N.M. 92, 93-94, 628 P.2d 337, 338-39 (Ct. App. 1981) (discussing indemnification and contribution claims as questions for the jury). Because genuine issues of material fact existed as to whether Safeway was entitled to common law indemnification from Rooter for the damages assessed to it by the jury, the district court improperly granted summary judgment on this issue. *See In re Vista Hills Retaining Wall Litig.*, 119 N.M. at 548-49, 893 P.2d at 444-45 (stating that the Supreme Court could not conclude whether a tortfeasor's conduct was passive or active on appeal because the facts were open to contradictory interpretations, and therefore concluding that the district court improperly granted summary judgment).

**{25}** We also note our conclusion that the right to common law indemnification in these circumstances is not precluded by Section 56-7-1. In the statute, the Legislature only addressed "agreements" to indemnify in the construction context, not common law right to indemnification. Further, the common law right to indemnification is well-defined in our case law and was not addressed by the original statute or any subsequent amendments. *See* § 56-7-1 (2005); *Sims v. Sims*, 1996-NMSC-078, ¶ 23, 122 N.M. 618, 930 P.2d 153 ("We adopt a strict rule that the common law must be expressly abrogated by a statute because, when determining the meaning of a statute, courts will often construe the language in light of the preexisting common law. The common law fills in gaps not addressed by a statute." (citation omitted)); *In re Vista Hills Retaining Wall Litig.*, 119 N.M. at 553, 893 P.2d at 449. Because the statute only applies to agreements to indemnify, it is inapplicable to parties raising the right of common law indemnification in the absence of an agreement to indemnify. Likewise, we conclude that a party's indemnification agreement's unenforceability under Section 56-7-1 has no effect upon a party's common law right to indemnification.

## D. Duty to Insure and Defend

**{26}** The original version of Section 56-7-1 did not address agreements to defend or insure. Rather, the statute specifically declared as unenforceable: "Any provision contained in any [construction related activity] agreement . . . by which any party to the agreement agrees to *indemnify* the indemnitee." Section 56-7-1 (1971). In 2003, Section 56-7-1 was amended to specifically include an agreement to insure or defend against the indemnitee's negligence stating: "A provision in a construction contract that requires one party to the contract to *indemnify, hold harmless, insure or defend* the other party to the contract" against liability for the negligence, acts or omissions of the indemnitee is unenforceable. Section 56-7-1(A) (2003).

10

**{27}** The Legislature was capable of including agreements to defend or insure in the language of the indemnity statute, and did so in 2003. However, when the statute was enacted in 1971, the Legislature did not include those provisions as being violative of the public policy of New Mexico. Accordingly, we conclude that the Legislature did not intend that the original version of the statute apply to agreements to defend or insure. *See Key v. Chrysler Motors Corp.*, 121 N.M. 764, 768-69, 918 P.2d 350, 354-55 (1996) ("In interpreting statutes, we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background."); *see also Hart v. Warder*, 57 N.M. 14, 15, 252 P.2d 515, 516 (1953) (applying the statutory canon of "[e]xpressio unius est exclusio atlerius," meaning the inclusion of one thing implies the exclusion of another, in refusing to interpret the scope of a statute governing real property to extend to personal property). Thus, because the original version of the statute applies to the agreement, the defense and insurance provisions of the agreement are enforceable.[1]

**{28}** We note that our Supreme Court invalidated a contract which required one party to "defend at its own cost and indemnify and hold harmless" the other party in *Sierra* under the 1971 version of Section 56-7-1. *Sierra*, 106 N.M. at 575-76, 746 P.2d at 1107-08. However, the issue in *Sierra* dealt with the indemnitor's argument that the contract should be reformed to be consistent with Section 56-7-1 by enforcing it only to the extent of the indemnitee's negligence, an argument which the Court rejected under the language of the 1971 version of the statute. *See Sierra*, 106 N.M. at 575, 746 P.2d at 1107-08. Although the Court found the entire contract unenforceable, no discussion in *Sierra* addressed the issue of enforceability of agreements to defend, and we do not consider cases as authority for propositions not raised. *See Fernandez v. Farmers Ins. Co. of Ariz.*, 115 N.M. 622, 627, 857 P.2d 22, 27 (1993). Furthermore, since *Sierra* was decided, we have concluded that an agreement to defend is distinct and separate from an agreement to indemnify. *See BPLW Architects*, 2009-NMCA-081, ¶ 31. We therefore conclude that our interpretation of the 1971 version of the statute is consistent with *Sierra* and subsequent New Mexico case law.

**{29}** Furthermore, although Plaintiffs dismissed their strict and vicarious liability claims

---

[1]We note that under the 2003 amendment to the statute, Rooter's agreement to provide a defense to Safeway "from and against: any and all claims . . . in connection with any claim or cause of action arising from any act or omission of [Rooter] . . . in the performance of its obligations under this Agreement," is enforceable. *See Windham*, 2012-NMCA-001, ¶¶ 15-18 (stating that the 2003 version of Section 56-7-1 did not void an agreement to defend a subcontractor when the claims against the subcontractor arose out of the negligence of the contractor); *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶¶ 19-20, 146 N.M. 717, 213 P.3d 1146 (concluding that a contractual provision that required a contractor to defend the city from any lawsuit alleging that the city was negligent so long as the claim arose from the contractor's alleged negligence was enforceable under the amended version of Section 56-7-1).

11

against Safeway, Rooter nonetheless had a duty to defend under the contractual provision for any claims "arising from" the work performed by Rooter, whether they were vicarious liability claims or other causes of action. *See BPLW Architects*, 2009-NMCA-081, ¶¶ 6, 22-24 (concluding that a contractual provision requiring a party to defend the other for any claims "arising out of" the contractor's negligence was triggered by the allegations in the complaint against the city for its negligent failure to inspect, irrespective of the lack of allegations of vicarious liability claims).

{30}    With respect to the duty to insure, because the contractual provision was enforceable, the dismissal of Plaintiffs' vicarious liability claims also does not resolve the question of whether that duty was breached and harm resulted to Safeway. Accordingly, genuine issues of material fact existed as to Rooter's duty to defend and insure, and summary judgment was improperly granted as to those issues.

## III.    CONCLUSION

{31}    We reverse the district court's grant of summary judgment with respect to Safeway's right to common law indemnification and as to the enforceability of Rooter's agreement to defend and insure Safeway and remand for further proceedings consistent with this opinion. We affirm as to all other issues.

{32}    **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Chief Judge**

_____
**CYNTHIA A. FRY, Judge**

**Topic Index for *Safeway, Inc. v. Rooter 2000 Plumbing & Drain SSS*, No. 30,196**

**APPEAL AND ERROR**
Standard of Review

**CIVIL PROCEDURE**
Summary Judgment

**CONTRACTS**
Breach

Duty to Defend
Indemnification Agreement
Interpretation

**INSURANCE**
Indemnity

**STATUTES**
Applicability
Interpretation
Retroactivity

**TORTS**
Negligence
Premises Liability