**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: June 21, 2017

**NO. 34,640**

**DON R. BACA,**

      Worker-Appellant,

v.

**STATE OF NEW MEXICO and**
**RISK MANAGEMENT DIVISION,**

      Employer/Insurer-Appellee.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Terry S. Kramer, Workers' Compensation Judge**

Gerald A. Hanrahan
Albuquerque, NM

for Appellant

Hatcher Law Group, P.A.
Scott P. Hatcher
Mark A. Cox
Santa Fe, NM

for Appellee

**OPINION**

**GARCIA, Judge.**

{1}     The primary issue in this workers' compensation appeal is the enforceability of the parties' stipulated compensation order (the SCO) that was filed on August 4, 2004. Although much has happened since the SCO was approved and both parties have substantially contributed to the procedural dilemma since 2004, we are able to resolve the present appeal succinctly. We conclude that the workers' compensation judge (the WCJ) was without authority to approve the SCO containing a partial lump-sum payment to Worker because the SCO did not comply with the Workers' Compensation Administration Act (the WCAA), NMSA 1978, §§ 52-5-1 to -22 (1987, as amended through 2013), specifically Section 52-5-12(C). In 2014, when addressing a motion by the State (Employer), the WCJ erred by determining that the SCO was enforceable against Worker. As a result, we reverse and remand this matter to the Workers' Compensation Administration (the WCA) for further proceedings.

**BACKGROUND**

{2}     On August 4, 2004, the parties entered into the SCO to settle a dispute regarding Worker's entitlement to workers' compensation benefits as the result of an accident and injuries to Worker's back that occurred on July 24, 2002. It is undisputed by Employer that no hearing was held by the WCJ to approve the

provisions of the SCO or otherwise confirm Worker's knowledge of the partial lump-sum settlement or any of the material facts contained therein. The SCO set Worker's permanent partial disability (PPD) benefits at $193,554.62, offset $54,746.12 for previous PPD benefits paid, allowed a $60,000 partial lump-sum payment to Worker to pay debts, and provided for the remaining PPD benefits to be paid at $250 per week, on a bi-weekly basis, for 315.234 weeks. In 2010, Worker underwent the first of several additional surgeries due to the further deterioration of his back injury. Without any modification of the SCO or Worker's previous 2004 benefits and without any application, hearing, or order of modification pursuant to the Workers' Compensation Act (the Act), NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2016) and the WCAA, specifically Section 52-1-56 and Section 52-5-9, Employer unilaterally notified and paid Worker additional workers' compensation indemnity benefits of approximately $92,530.72.

{3} In 2014, Employer filed an application seeking an independent medical examination (IME) of Worker for the purpose of determining his current medical condition, ascertaining whether Worker has attained maximum medical improvement (MMI), whether Worker had an impairment rating, and to determine the reasonableness, necessity, and scope of future medical care. After Employer's application for an IME was addressed and denied by the WCJ, Employer filed a

complaint seeking a determination of compensability/benefits and a credit for any overpayment, as well as a motion for supplemental compensation order (the MSCO). In response to the MSCO, Worker asserted that: (1) the SCO was not enforceable because a hearing to approve the SCO was never held; (2) Employer waived any overpayment of additional benefits that Employer had voluntarily paid to Worker pursuant to the provisions of the SCO; and (3) Worker was entitled to a reinstatement of temporary total disability (TTD) payments and a modification of benefits pursuant to Section 52-1-56, Section 52-5-9, *Benny v. Moberg Welding*, 2007-NMCA-124, 142 N.M. 501, 167 P.3d 949, and also applying *Fowler v. Vista Care*, 2014-NMSC-019, 329 P.3d 630. Worker also filed a counterclaim for the approval of a spinal cord stimulator, approval of TTD payments until he reached MMI in the future, and approval of PPD payments once MMI was reached in the future. Employer asserted that the issues to be resolved were only legal and that the WCJ could rule from the pleadings without the need for an evidentiary hearing. The WCJ granted Employer's MSCO and ruled that (1) the SCO was enforceable "as written," (2) Employer mistakenly overpaid benefits to Worker, and (3) Worker was required to reimburse Employer for the excess benefits paid in the amount of approximately $92,530.72. Worker timely appealed.

{4}     Worker raises four separate arguments on appeal. Worker asserts that the WCJ

erred by: (1) failing to mutually apply the principle of waiver to all provisions in the SCO; (2) converting the MSCO into a strictly legal argument and granting summary judgment in favor of Employer; (3) failing to apply the holding in *Benny* to effectuate a modification of the SCO based upon the parties' actions since 2004; and (4) failing to determine that the SCO was invalid and unenforceable under *Sommerville v. Southwest Firebird,* 2008-NMSC-034, 144 N.M. 396, 188 P.3d 1147. Because we reverse and remand based upon our determination that the SCO was unenforceable, it is not necessary that we address Worker's other issues at this time.

**DISCUSSION**

**I.     The WCJ Erred by Enforcing the SCO**

{5}     We review "a summary judgment ruling de novo." *Id.* ¶ 5; *see Paradiso v. Tipps Equip.*, 2004-NMCA-009, ¶ 23, 134 N.M. 814, 82 P.3d 985 ("We therefore review the issue de novo and determine whether the applicable law was correctly applied to the facts."). Depending upon the statutory section in dispute, our appellate courts may still apply principles of liberal construction to the Act and the WCAA as "one of many tools employed in construing legislation." *Benavides v. E. N.M. Med. Ctr.*, 2014-NMSC-037, ¶ 44, 338 P.3d 1265. When a statute is not clear, "we must attempt to construe [it] according to its obvious spirit or reason." *Id.* ¶ 24 (internal quotation marks and citation omitted); *see Michaels v. Anglo Am. Auto Auctions, Inc.*,

4

1994-NMSC-015, ¶ 13, 117 N.M. 91, 869 P.2d 279 ("There are three points to be considered in the construction of all remedial statutes; the old law, the mischief, and the remedy; that is, how the common law stood at the making of the act; what the mischief was, for which the common law did not provide; and what remedy the parliament hath provided to cure this mischief. And it is the business of the judges so to construe the act as to suppress the mischief and advance the remedy." (internal quotation marks and citation omitted)).

{6} The statutory construction considerations in the present case—the old law, the mischief, and the remedy—regarding lump-sum payments to injured workers have been clearly articulated. Lump-sum payments are specifically disfavored in workers' compensation cases. *See* § 52-5-12(A) ("It is stated policy for the administration of the [Act] . . . that it is in the best interest of the injured worker or disabled employee that the worker or employee receive benefit payments on a periodic basis."); *Sommerville*, 2008-NMSC-034, ¶ 6 ("The Act's express policy is that it is in an injured worker's best interest to receive workers' compensation benefits on a periodic basis, rather than in a lump[-]sum."). As a result, the Legislature has specifically restricted their use. *See* §§ 52-5-12 to -14; *Paradiso*, 2004-NMCA-009, ¶ 25 (emphasizing that "[t]he Legislature set unmistakable policy [when it limited] lump[-]sum payments under the [WCAA]"). These restrictions are aimed at protecting

workers from future financial risk. *See Sommerville*, 2008-NMSC-034, ¶ 7 ("Payment of disability benefits in a lump[-]sum creates a risk that the worker will need to rely on public benefits during the time that periodic disability payments would otherwise be available." (alteration, internal quotation marks, and citation omitted)); *Cabazos v. Calloway Constr.*, 1994-NMCA-091, ¶ 12, 118 N.M. 198, 879 P.2d 1217 ("The chief reason not to grant a lump-sum benefit is that it creates a risk that the worker will need to rely on welfare during the time that periodic disability payments would otherwise be available." (internal quotation marks and citations omitted)).

{7}     Section 52-5-12(A) expressly states that "[e]xcept as provided in this section, lump-sum payments in exchange for the release of the employer from liability for future payments of compensation or medical benefits *shall not* be allowed." (Emphasis added.) As explained in *Sommerville*:

> The [only] two exceptions to this policy are set out in Sections 52-5-12(B) and (C). Both sections allow a worker, with the approval of [the] WCJ, to elect to receive a lump[-]sum payment under specified circumstances. Section 52-5-12(B) permits a worker to elect to receive a lump[-]sum payment award if he or she has returned to work for at least six months and is earning at least eighty percent of his or her pre-injury wage. Section 52-5-12(C) permits a worker who has reached [MMI] to elect to receive a partial lump[-]sum payment for the sole purpose of paying debts that have accumulated during the worker's period of disability.

2008-NMSC-034, ¶ 6. Section 52-5-13 requires WCJ approval for all lump-sum settlements and requires the WCJ to "assure that the worker or his dependents

6

understand the terms and conditions of the proposed settlement[.]" Section 52-5-14(A) states,

> If the [WCJ] finds the lump-sum payment agreement to be fair, equitable[,] and consistent with the provisions of the [Act,] . . . he shall approve the agreement by order[.] . . . The [WCJ] may refuse to approve a settlement if he does not believe that it provides substantial justice to the parties.

**A.  Whether the SCO Was in Compliance With Section 52-5-12(B) and (C)**

{8}  We first address the two limited exceptions, Sections 52-5-12(B) and (C), that allow a worker to elect, with the approval of the WCJ, to receive a lump-sum payment in lieu of future workers' compensation benefits. Because Worker only received a partial lump-sum payment of his disability benefits under the SCO, Section 52-5-12(B) is not applicable in this case. *See Cabazos*, 1994-NMCA-091, ¶ 9 (recognizing that Subsection B only applies when the worker has received a full lump-sum payment of all compensation benefits). Neither Worker nor Employer contend that the $60,000 partial lump-sum settlement payment in the SCO meets the "for the sole purpose of paying debts" exception set forth in Section 52-5-12(C). Based upon our review of the record, we agree that this $60,000 amount is unsupportable. Worker filed an unverified petition and affidavit alleging that "debts . . . may have accumulated during the course of [his] disability," identified an amount of "$21,000," and referenced outstanding itemized sources totaling $20,084.94. *See Souter v. Ancae*

*Heating & Air Conditioning*, 2002-NMCA-078, ¶ 12, 132 N.M. 608, 52 P.3d 980 (recognizing that "partial lump-sum payments are restricted to the amount necessary to pay accumulated debts of workers who may never be able to return to work and are based on need"). Instead, the parties primarily argue about the approval process for lump-sum payments, the disputed application of *Sommerville*, and any requirements for a formal hearing to approve lump-sum payments under Section 52-5-13 and Section 52-5-14.

{9}     The second issue we address is whether a proper review and determination under Section 52-5-13 is required to enforce the parties' SCO that contains a lump-sum payment of benefits to Worker under Subsection 52-5-12(C). *See Quintana v. Ilfelds*, 1993-NMCA-158, ¶ 6, 116 N.M. 836, 867 P.2d 1218 (determining sua sponte that the proposed partial lump-sum payment pursuant to Section 52-5-12(C) was unenforceable and must be set aside). Our Court, in a memorandum opinion that carries no precedential effect in the present case, has previously addressed whether an agreement that includes an impermissible lump-sum payment of workers' compensation benefits is enforceable. *See Lucero v. First Fleet*, No. 31,096, mem. op. (N.M. Ct. App. July 5, 2012) (non-precedential). We now address and resolve this issue formally.

{10}     The purpose for severely restricting lump-sum payments of workers'

compensation benefits under the WCAA is to prevent injured workers from "rely[ing] on public benefits during the time that periodic disability payments would otherwise [have been] available." *Sommerville*, 2008-NMSC-034, ¶ 7 (alteration, internal quotation marks, and citation omitted). To grant the WCJ discretion to approve partial lump-sum payments that do not qualify under Section 52-5-12(C) would clearly circumvent the unmistakable policy restricting lump-sum payments under the WCAA and the Act. *See Cabazos*, 1994-NMCA-091, ¶ 15 (noting that even qualifying partial lump-sum payments under Subsection C must be carefully scrutinized by the WCJ during the approval process to prevent abuse). Agreements have been rejected and overturned by this Court for non-compliance with Section 52-5-12(C). *See Quintana*, 1993-NMCA-158, ¶¶ 6, 9 (reinstating the requirement for periodic payments when a partial lump-sum payment of benefits under Subsection C of Section 52-5-12 was set aside). As a result, where the parties' SCO was not in compliance with Section 52-5-12(C), the WCJ had no authority to approve the SCO containing a partial lump-sum payment of benefits, and the SCO was invalid, unenforceable, and will "not be allowed" under Section 52-5-12(A). Because the SCO continued to be invalid and unenforceable when Employer filed the MSCO, the WCJ's order granting the MSCO and ruling that the SCO was enforceable "as written" was also error and is now reversed.

**B.    Whether the SCO Was in Compliance With Sections 52-5-13, 52-5-14(A) and *Sommerville***

{11}    We continue our analysis of the WCJ's approval of the SCO under *Sommerville* because this analysis effectively overlaps our determination that the SCO is unenforceable under Section 52-5-12. This overlap occurs because the plain language of Section 52-5-14(A) required the WCJ to approve the SCO and partial lump-sum payment agreement only after it determined that it was "fair, equitable[,] . . . *consistent with provisions of* the . . . Act," and "provides substantial justice to the parties." (Emphasis added.) As emphasized above, the partial lump-sum payment presented to the WCJ was, based upon the undisputed facts in the record, inconsistent with Section 52-5-12(C). Employer argues that "*Sommerville* did not interfere with [the] WCJ's discretion" to approve a lump-sum payment of benefits, but should be limited to cases "when a worker is not represented by counsel." Employer also argues that even if *Sommerville* is applicable to Worker's arguments under Sections 52-5-13 and -14(A), "it does not have retroactive effect to 2004" and its holding should only have "prospective application" under the factors established by the *Marckstadt,* case. *See Marckstadt v. Lockheed Martin Corp.*, 2010-NMSC-001, ¶ 31, 147 N.M. 678, 228 P.3d 462 (setting out the factors to determine whether an appellate court's decision is to be applied retroactively or only prospectively). We reject Employer's arguments.

{12} First, the need for strict scrutiny regarding the approval of lump-sum payments of benefits to a worker is to ensure that the WCJ fulfills its "integral role in ensuring that the [WCAA's] policy regarding lump[-]sum settlements is preserved [and t]he WCJ is required to consider all material circumstances surrounding the lump[-]sum settlement agreement[.]" *Sommerville*, 2008-NMSC-034, ¶ 8. The importance for this strict compliance "with the [review and approval] requirements of Sections 52-5-13 and -14(A) is . . . to assure adherence to the policies established by the Legislature favoring periodic payments over lump[-]sum payments[.]" *Sommerville*, 2008-NMSC-034, ¶ 8 (internal quotation marks and citation omitted). "Lump[-]sum agreements that *do not follow the express requirements of* the Act are not enforceable." *Id.* ¶ 9 (emphasis added); *see Paradiso*, 2004-NMCA-009, ¶ 31 (recognizing that a lump-sum settlement agreement was not enforceable when it failed to comply with Sections 52-5-13 and -14(A) of the WCAA). Therefore, "[t]he WCJ must . . . play an active role in the approval of lump[-]sum settlements." *Sommerville*, 2008-NMSC-034, ¶ 13.

{13} We reject a narrow reading of *Sommerville*'s policy analysis imposing strict adherence to the review and approval requirements of Sections 52-5-13 and -14(A). Although *Sommerville* involved the rejection of a lump-sum settlement agreement where the worker was not represented by counsel, its ruling was directed toward

11

compliance with the WCAA and specified that where "[t]he WCJ [fails to] follow the express requirements of the [WCAA,] the lump[-]sum agreement is unenforceable." 2008-NMSC-034, ¶ 11. Accordingly, we reject Employer's argument that our Supreme Court's holding in *Sommerville* was only intended to apply in cases involving unrepresented workers. It is applicable under Sections 52-5-12, -13 and -14(A) whenever "[t]he WCJ [fails to] follow the express requirements of the [WCAA]." *Sommerville*, 2008-NMSC-034, ¶ 11.

{14} Like *Sommerville*, we hold that the WCJ failed to strictly adhere to the review and approval requirements of Sections 52-5-13 and 14(A) in this case. The petition and unverified affidavit only supported a partial lump-sum payment of no more than $20,084.94. No hearing was even held to approve the SCO. To ignore the strict review and approval requirements under Sections 52-5-13 and -14(A), as Employer suggests, would render the language in Section 52-5-12 surplusage, which is "contrary to ordinary rules of statutory construction." *Benny*, 2007-NMCA-124, ¶ 8. Since the partial lump-sum payment did not conform to Section 52-5-12(C), the WCJ erred in approving the SCO under Sections 52-5-13 and -14. *See Sommerville*, 2008-NMSC-034, ¶ 9 (confirming that "[l]ump[-]sum agreements that do not follow the express requirements of the [WCAA] are not enforceable"). As a result, the SCO was equally unenforceable due to the WCJ's failure to comply with the review and

approval requirements of Sections 52-5-13 and -14(A).

{15}    Finally, we address Employer's argument that our Supreme Court's holding in *Sommerville* should not have retroactive effect over settlement agreements entered into prior to April 9, 2008, the date the *Sommerville* opinion was filed. *See* 2008-NMSC-034 (including a filing date of April 9, 2008). Nothing in *Sommerville* indicates that our Supreme Court understood or even considered that its ruling would overrule clearly established past precedent, establish a new principle of law, or create an injustice or hardship. *Id.* Employer provides no supporting evidence or cited authority that remotely establishes or confirms that its fears of retroactive injustice and hardship materialized between 2008 and 2014, the date Employer filed its MSCO. *See Atma v. Munoz*, 1944-NMSC-016, ¶ 20, 48 N.M. 114, 146 P.2d 631 (noting that where there is a lack of evidence to support a finding, the court cannot assume evidence exists in support of a party's view of the law); *Pickett Ranch, LLC v. Curry*, 2006-NMCA-082, ¶ 45, 140 N.M. 49, 139 P.3d 209 (noting that when no authority is cited for a proposition, we are "entitled to assume that there is no applicable or analogous authority").

{16}    The general presumption is that the holding established in a civil case will "apply retroactively." *Marckstadt*, 2010-NMSC-001, ¶ 31. Our Supreme Court's decision in *Sommerville* does not satisfy the first factor established in *Marckstadt* to

prevent its retroactive application to prior lump-sum distributions under Section 52-5-12. *See Marckstadt*, 2010-NMSC-001, ¶ 31 (stating that the first factor for determining that a decision will not be applied retroactively is it "must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed" (internal quotation marks and citation omitted)). We conclude that Employer's prospective application argument is not persuasive.

{17} First, whether the analysis in *Sommerville* could be considered an issue of first impression is disputed by Worker. We agree. Although the review and approval process under Sections 52-5-13 and -14(A) were addressed in *Sommerville*, the requirement that the WCJ play an active role in determining whether a worker—not represented by counsel—understands the terms and conditions of a settlement agreement should not be considered unique or contrary to recognized precedent. *See Sherrill v. Farmers Ins. Exch.*, 2016-NMCA-056, ¶¶ 3, 11, 19, 374 P.3d 723 (recognizing the vulnerability of unrepresented parties in the insurance settlement process and its public policy implications); *State v. Reyes*, 2005-NMCA-080, ¶ 10, 137 N.M. 727, 114 P.3d 407 (recognizing that, in a criminal prosecution, special care must be taken to make sure the defendant is advised "as to the ramifications of proceeding pro se [and] is aware of the pitfalls of self-representation"). We recognize

14

the WCJ must fulfill its role—assuring that the worker understands the terms and conditions of the settlement and determining that a worker's lump-sum payment of benefits is fair and just—but this role is not a unique or novel legal issue of first impression. *See* §§ 52-5-13 and -14(A).

{18} Second, no new rule of law or rejection of past precedent was established in *Sommerville*. As noted in *Marckstadt*, "a matter of statutory and regulatory interpretation drawing on explicit language in the relevant provisions [is a result] the parties could have foreseen." 2010-NMSC-001, ¶ 31; *see Padilla v. Wall Colmonoy Corp.*, 2006-NMCA-137, ¶¶ 12-19, 140 N.M. 630, 145 P.3d 110 (recognizing that the first factor limiting retroactive application of a court's ruling was not met because the Act was not ever intended to immunize employers from liability for intentional torts, even where *Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, 131 N.M. 272, 34 P.3d 1148, articulated a new rule or principle of law). In effect, it "is not . . . a new rule[,] it does not supplant any prior rule," and it does not weigh in favor of the factors limiting a ruling to prospective application. *Marckstadt*, 2010-NMSC-001, ¶ 31. The interpretations of Sections 52-4-13 and -14(A) in *Sommerville* were equally foreseeable and are consistent with the Legislature's unmistakable policy limiting lump-sum payments under the WCAA. *See Paradiso*, 2004-NMCA-009, ¶ 25 ("The Legislature set unmistakable policy [when it limited] lump[-]sum payments under the

15

. . . Act[.]"). As a result, Employer has failed to satisfy the first factor under *Marckstadt* for establishing that *Sommerville* should not have retroactive effect over lump-sum settlement agreements entered into prior to April 9, 2008. Our Supreme Court's holding in *Sommerville* will be applied retroactively and, to the extent it is applicable to our decision in the present case, it is controlling precedent. *See Aguilera v. Palm Harbor Homes, Inc.*, 2002-NMSC-029, ¶ 6, 132 N.M. 715, 54 P.3d 993 ("encourag[ing] the Court of Appeals to express its rationale for any reservations it might harbor over Supreme Court precedent[,]" but emphasizing "the Court of Appeals, nonetheless, remains bound by Supreme Court precedent" (alteration, internal quotation marks, and citations omitted)).

## II.    Remand to Address Worker's Claims

{19}    Now that this Court has held the SCO invalid and unenforceable, our remand to the WCA will place a burden on the parties and the WCJ to reconcile the actions of the past. *See Scott v. Rizzo*, 1981-NMSC-021, ¶¶ 8, 16-22, 96 N.M. 682, 634 P.2d 1234 (recognizing that some decisions by the appellate courts can result in difficulties that must be addressed on remand), *superseded by statute as stated in Safeway, Inc. v. Rooter 2000 Plumbing & Drain SSS*, 2016-NMSC-009, 368 P.3d 389. Initially, we note that much has happened since the SCO was erroneously approved in 2004. The WCJ will need to address the subsequent deterioration of Worker's back injury that

required additional surgeries in 2010 and 2011, reconcile the various benefit payments actually made by Employer, and incorporate the many applicable appellate court workers' compensation cases since 2004. *See Fowler*, 2014-NMSC-019; *Sommerville*, 2008-NMSC-034; *Rodriguez v. Scotts Landscaping*, 2008-NMCA-046, 143 N.M. 726, 181 P.3d 718; *Benny*, 2007-NMCA-124. In our view, the ramifications of reversal in this case do not present circumstances that common sense and a reasonable application of the Act and the WCAA will not resolve. *See Scott*, 1981-NMSC-021, ¶¶ 16, 18-19 (noting that common sense and basic theories of law should be sufficient to address the difficulties imposed upon fact-finders when confusion and uncertainty arise in a case).

**CONCLUSION**

{20}     We reverse the WCJ's ruling that the SCO is valid and enforceable against Worker. We do not address the remaining arguments presented by Worker and remand to the WCA for further proceedings consistent with this opinion.

{21}     **IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

17

**WE CONCUR:**

_____

**LINDA M. VANZI, Chief Judge**

_____

**J. MILES HANISEE, Judge**